UNITED STATES OF AMERICA
DISTRICT COURT
EASTERN DIVISION OF MASSACHUSETTS

| | |
|---|---|
| Eugene E. Keenan, Jr. <br>     Plaintiff <br> v. <br> <br> Wells Fargo Bank, N.A. d/b/a America's Servicing Company, U.S. Bank, N.A. as Trustee for BAFC 2007-4 <br>     Defendants | Docket No. 16-cv-10653 |

## COMPLAINT

NOW COMES Plaintiff Eugene E. Keenan, Jr. ("Keenan" or Plaintiff" as the case may be), by and through counsel and files his complaint against Wells Fargo Bank, N.A., d/b/a America's Servicing Company ("ASC" or "Wells Fargo" as the case may be) and U.S. Bank N.A., as Trustee for BAFC-2007-4 ("U.S. Bank") - collectively "Defendants" as the case may be.  In further support of Keenan's complaint he states as follows:

1.)     Keenan is a natural person with a mailing address of 56 Bartlett Parkway, Unit 1 Winthrop, MA, 02152.

2.)     ASC is a wholly owned subsidiary and/or trade name of Wells Fargo with a mailing address of P.O. Box 10335, Des Moines, IA 50306-0388.

3.)     U.S. Bank, N.A. as Trustee for BAFC 2007-4 Trust is a national association with an address c/o Wells Fargo of 60 Livingston Ave., St. Paul, MN 55107.

4.)     On or about February 21, 2007, Keenan executed a mortgage and promissory note (the "mortgage" and/or the "note; collectively "mortgage loan") for his primary residence at 56 Bartlett Parkway, Unit 1, Winthrop, MA.

5.) The mortgage was in the name of "Mortgage Electronic Registration Systems, Inc." ("MERS") as "mortgagee".

6.) The note was in the name of "American Broker's Conduit" ("ABC")

7.) At some point U.S. Bank claims to have obtained ownership of Keenan's mortgage loan by "assignment".

8.) ASC has represented to Keenan that it is lawfully authorized on behalf of U.S. Bank to "service" Keenan's mortgage loan, i.e. to collect payments, maintain records, to assess various fees, costs and expenses to Keenan's mortgage loan account, to conduct default, acceleration and foreclosure processes on behalf of U.S. Bank, to engage counsel for litigation relative to the loan account on behalf of U.S. Bank.

9.) ASC is "engaged in commerce" in the Commonwealth of Massachusetts as that term is defined under G.L. c. 93A ("Chapter 93A").

10.) In early May, 2010, Eugene Keenan got a letter from ASC returning his May 1, 2010 mortgage payment and stating that ASC would not accept his payment because it did not "represent the total due on [his] account". He was told at that time that his property was being placed "in foreclosure".

11.) On June 6, 2012, Keenan was at home when a foreclosure sale of his home supposedly took place.

12.) On July 12, 2013, a foreclosure deed was recorded at the Suffolk County Registry of Deeds purportedly transferring the title of Keenan's property to U.S. Bank. Attached to this document was an "affidavit" purporting to attest to the foreclosure process of Keenan's property.

13.) On or about October 28, 2013, U.S. Bank filed a summary process eviction action against Keenan (and his family) in the East Boston Municipal Court by and through counsel at Harmon Law Offices, PC ("HLO").

14.) On November 1, 2013, Keenan filed an answer to the eviction complaint denying the lawfulness of any default, loan modification or foreclosure process.

15.) The matters were eventually moved to the Boston Municipal Court ("BMC") as Docket No. 14-CV-398.

16.) Keenan obtained leave of Court to amend his answer and to add counterclaims in March 2014.

17.) A bench trial was held on the matters on four (4) days from October 2014 to May 2015.

18.) On or about January 14, 2016, almost a year after trial, U.S. Bank filed a motion to dismiss U.S. Bank's claim(s) for possession in the eviction action.

19.) Post-trial briefings have been filed with the Court.

20.) By letters dated January 21, 2016, ASC purported to make demand on Keenan for moneys purported due on this loan account for property which had been foreclosed on some four (4) years earlier and which property is no longer in Keenan's name – but rather is shown on the public land records as being in the name of U.S. Bank.

21.) At the time of the January 21, 2016 letters which were addressed and sent to Keenan directly, ASC was aware that Keenan was represented by counsel.

22.) In one communication, ASC falsely advised Keenan that: "As of the date of this statement, Wells Fargo has not made the first notice or filing required by applicable law for the foreclosure process."

23.) ASC knew the statement to Keenan that: "As of the date of this statement, Wells Fargo has not made the first notice or filing required by applicable law for the foreclosure process" was false and untrue.

24.) Additionally, in another letter dated January 21, 2016, ASC made demand for proof of insurance on the property despite the property being in the name of U.S. Bank making U.S. Bank responsible for any insurance payment(s).

25.) In this communication, ASC knew that Keenan was not required to provide insurance coverage for a property claimed to be owned by U.S. Bank.

26.) ASC maintains no system(s) to ensure the accuracy of its mailings to Keenan in this matter since ASC and U.S. Bank are the entities that purportedly defaulted, engaged in the foreclosure process, and have filed suit to evict Keenan from their home some three (3) years ago, they have actual knowledge of these matters.

27.) Keenan – already devastated by a purported default, failed loan modification, foreclosure and litigation process that has taken more than six (6) years of his life was utterly shocked to receive these letters from ASC.

28.) Keenan, already under a doctor's care for anxiety caused by the stress of going through more than six (6) years of dealing with ASC in these matters, including almost four (4) years of litigation, four (4) days of trial and having spent tens of thousands of dollars in attorney's fees to defend himself and his family, felt nauseous, depressed and panicky. His anxiety became extreme and Keenan had trouble relaxing and going to sleep. He became moody and depressed and angry.

29.) By letter dated January 26, 2016, Keenan made demand on ASC pursuant to Chapter 93A for damages caused by ASC's unfair and deceptive acts and practices in sending the January 21, 2016 letters to Keenan – the claims and allegation of which are incorporated herein by reference.

30.) A copy of the January 26, 2016 letter was sent to ASC's counsel in the eviction case.

31.) By letter dated February 5, 2016, ASC acknowledged receipt of Keenan's Chapter 93A demand letter – by sending an acknowledgement to Keenan despite, again, knowledge that Keenan was represented by counsel.

32.)    Keenan's mortgage loan represents a "debt" as defined by the Fair Debt Collection Practices Act ("FDCPA") at 15 USC 1692, *et* seq., , the Massachusetts analog of the FDCPA at G.L. c. 93, s. 49 ("MFDCPA") and the MA Attorney General's Regulations regarding debt collection at 940 CMR 7.00.

33.)    ASC and U.S. Bank regularly engage in the act of debt collection in the Commonwealth of Massachusetts by and through the ownership, servicing, and/or the default, acceleration, foreclosure, deficiency and litigation process relative to mortgage loans such as Keenan's.

34.)    U.S. Bank purports to have obtained the ownership of Keenan's loan – according to the public land records – at a time when the loan was in default.

35.)    U.S. Bank is liable for the wrongful acts and practices of ASC and has failed to provide any – or at minimum, proper, supervision or oversight over ASC (and any other agents) in these matters. Keenan's loan, has negligently failed to properly supervise its agents as stated herein.

36.)    Keenan, as a borrower under a residential mortgage loan, is considered to be a "consumer" as defined by Chapter 93A

37.)    Keenan obtained his mortgage loan for personal use (i.e., for work performed at his primary Residence or for household bills).

38.)    If U.S. Bank is not considered a "debt collector" as a matter of law, U.S. Bank is vicariously liable for the unlawful practices, actions and litigation tactics of its agent(s) ASC where:

   a.) U.S. Bank has directed the actions of ASC in these matters including but not limited to authorizing ASC to collect moneys on U.S. Bank's behalf, reimbursing ASC for legal fees,. cost and expenses in pursuing legal action(s) against Keenan;

   b.) Neither ASC nor U.S. Bank conducted any investigation into the validity of the debt;

   c.) Any amounts due from Keenan were extinguished as a matter of law under G.L. c. 244, s. 17A two (2) years after the date of the foreclosure of his home;

   d.) As otherwise may be shown at trial.

**COUNT ONE**
(violations of FDCPA and MFDCPA (G.L. c. 93, s. 49); 940 CMR 7.00)

1.)     The allegations in the foregoing numbered paragraphs are re-alleged and re-incorporated herein.

2.)     Keenan was the object of an attempt to collect a "debt" by Defendants as the term "debt" is defined under the FDCPA, MFDCPA and 940 CMR 7.00, *et seq*.

3.)     Defendants are "debt collector(s)" and/or "creditor(s)" as that term/those terms is/are defined under the FDCPA and MFDCPA and 940 CMR 7.00.

4.)     U.S. Bank is vicariously liable for the unlawful practices, actions and omissions of ASC in this matter.

5.)     Defendants violated the provisions of FDCPA at 15 USC 1692d (conduct which the natural consequence of which is to harass, oppress or abuse; making demand on Keenan for moneys not lawfully due and contacting him when they knew he was represented by counsel), e (false, deceptive or misleading representations; that Keenan owed moneys; that no foreclosure process had started), e(2) (character, amount or legal status of debt; that Keenan owed moneys; that no foreclosure process had started); e(5) (threatening or taking action that cannot legally be taken; demanding moneys Keenan which are/were not lawfully due), e(10) (false or deceptive means to collect; contacting Keenan directly when he was/is representing by counsel; claiming that no foreclosure process had started), f (unfair and unconscionable means to collect a debt; same), f(1) (attempt to collect any amount not authorized by agreement; demanding money not lawfully due), MFDCPA and 940 CMR 7.00 as described herein.

6.)     Defendants performed no investigation(s) as to the validity of the debt/action(s) being taken against Keenan or determining that he was represented by counsel before making demand on him for moneys not lawfully due.

7.)  Defendants maintain no procedures to avoid making demands on Keenan for moneys not due and where he is/was represented by counsel and if they have such procedures, they ignored and did not follow any such procedures.

8.)  As a result of the unlawful actions or omissions of Defendants, Keenan has suffered statutory damages under the FDCPA in at least the amount of $1,000.00.

9.)  As a result of the unlawful actions or omissions of Defendants, Keenan has suffered actual damages in the amount of at least $100,000.00 including but not limited to lost time from work, copy, mailing and other charges, attorney's fees and emotional distress damages as described herein.

## **COUNT TWO**
(negligent infliction of emotional distress)

10.)  Keenan repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

11.)  Keenan has suffered severe emotional distress the proximate cause of which is/was the unlawful practices, actions and omissions of Defendants as described herein.

12.)  Keenan's emotional distress is evidenced by physical symptoms as described herein.

13.)  Defendants' unlawful practices, actions and omissions as described herein were extreme and outrageous where Defendants knew that Keenan was represented by counsel and had no claims to any moneys from Keenan and that they had already purportedly foreclosed on Keenan's home.

14.)  Defendants knew or should have known that their unlawful practices, actions and litigation tactics is/was likely to cause Keenan to suffer emotional distress.

15.)  Keenan's emotional distress is/was severe and no reasonable person could be expected to endure it.

16.)   As a result of the unlawful practices, actions and omissions of Defendants, Keenan has suffered actual damages in the amount of at least $100,000.00 including but not limited to lost time from work, copy, mailing and other charges, attorney's fees and emotional distress damages as described herein.

## COUNT THREE
(Chapter 93A)

17.)   Keenan repeats and re-alleges the allegations in the foregoing numbered paragraphs as more fully set forth herein.

18.)   By letter dated January 26, 2016, Keenan made demand on ASC pursuant to Chapter 93A – the claims and allegation of which are incorporated herein by reference.

19.)   Be letter dated February 5, 2016, ASC acknowledged receipt of Keenan's Chapter 93A demand letter.

20.)   As of this date, ASC has failed and refused to respond to Keenan's Chapter 93A letter, despite having received it, by failing and refusing to deny the allegations therein and failing and refusing to make a reasonable offer of settlement.

21.)   As a result thereof, Keenan has suffered treble damages including attorney's fees and costs.

### KEENAN REQUESTS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE

WHEREFORE Defendant prays this Honorable Court award Keenan judgment on his claims, award him treble damages, attorney's fees and costs in defending this action while granting any such other and further relief as the Court deems meet and just.

DATED:       April 4, 2016
             Nantucket, MA

Plaintiff
By his counsel,

/s/ Jamie Ranney, Esq.
_____
Jamie Ranney, Esq., BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (ph)
508-815-1318 (efax)
jamie@nantucketlaw.pro