```
                    United States District Court
                      District of Massachusetts
 ──────────────────────────────
                              )
EUGENE E. KEENAN, JR.,        )
                              )
         Plaintiff,           )
                              )
         v.                   )   Civil Action No.
                              )   16-10653-NMG
WELLS FARGO BANK, N.A. and U.S.)
BANK N.A. AS TRUSTEE          )
                              )
         Defendants.          )
                              )
 ──────────────────────────────
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves a dispute over the purported foreclosure of property at 56 Bartlett Parkway, Unit 1, Winthrop, Massachusetts ("the property"). Eugene Keenan ("Keenan" or "plaintiff") alleges that defendants, Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("Wells Fargo") and U.S. Bank, N.A as Trustee d/b/a America's Servicing Company ("U.S. Bank" and, collectively with Wells Fargo, "defendants") sent demand letters to him for money allegedly owed on the property after they had already foreclosed on it. Plaintiff claims that such conduct 1) violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Massachusetts Fair Debt Collections Practices Act ("MFDCPA"), M.G.L. c. 93, § 49, 2) negligently inflicted emotional distress upon the plaintiff

and 3) violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A").

Defendants have filed a motion for judgment on the pleadings and, for the following reasons, that motion will be, with respect to the FDCPA claim, denied but otherwise allowed.

## I.    Factual and Procedural Background

For purposes of a motion for judgment on the pleadings, the Court assumes the truth of the facts in the complaint. According to the complaint, in February, 2007, Keenan granted a mortgage on the property to Mortgage Electronic Recording Systems, Inc. ("MERS"). MERS assigned the mortgage to U.S. Bank in March, 2009 and Wells Fargo is the loan servicer. In May, 2010, Wells Fargo informed Keenan by letter that his property was being placed in foreclosure. In June, 2012, U.S. Bank allegedly held a foreclosure sale on the property and in July, 2013, a foreclosure deed, purportedly transferring title to U.S. Bank, was recorded along with an affidavit confirming the foreclosure.

In October, 2013, U.S. Bank began a summary process eviction action against Keenan in East Boston Municipal Court. That case was removed to Boston Municipal Court ("BMC") and U.S. Bank moved for summary judgment on its eviction claim. Keenan opposed summary judgment on the grounds that U.S. Bank's purported foreclosure was unlawful and thus the foreclosure sale

was null and void. The BMC denied U.S. Bank's motion for summary judgment.

In January, 2016, after a bench trial in the BMC, U.S. Bank filed a motion to dismiss its eviction claim as a result of changes in foreclosure law that may have invalidated the foreclosure sale. The BMC set a briefing schedule for the remaining issues, including Keenan's counterclaims. It is unclear whether the BMC case is now resolved or still pending.

Contemporaneously, Wells Fargo, apparently conceding that the foreclosure was invalid, sent Keenan two letters attempting to collect money that he owed on the mortgage. Although he was represented by counsel, Wells Fargo sent the letters directly to Keenan. One letter stated that "Wells Fargo has not made the first notice or filing required . . . for the foreclosure process". Keenan alleges that, because Wells Fargo and U.S. Bank had already foreclosed upon his property, they knew that statement was false. The second letter requested proof of insurance on the property. Keenan asserts that defendants are not entitled to any money owed on the mortgage because, as a result of the attempted foreclosure, U.S. Bank is now the record owner of the property.

According to Keenan, he was "utterly shocked" by the letters and felt "nauseous, depressed and panicky". Keenan also states that "his anxiety became extreme", he had difficulty

sleeping and he suffered depression. Shortly thereafter, he made a Chapter 93A demand for damages on defendants, claiming that their unfair and deceptive practices had harmed him. Defendants responded to the Chapter 93A demand letter by again communicating directly with Keenan rather than with his counsel.

Keenan subsequently filed suit against defendants in this Court in April, 2016, alleging 1) violations of the FDCPA and MFDCPA, 2) negligent infliction of emotional distress and 3) Chapter 93A violations. Defendants timely answered, denying all substantive allegations. In November, 2016, defendants moved for judgment on the pleadings which plaintiff opposes and that motion is the subject of this memorandum and order.

## II.  Motion for Judgment on the Pleadings

### A. Legal Standard

Although a Rule 12(c) motion for judgment on the pleadings considers the factual allegations in both the complaint and the answer, it is governed by the same standard as a Rule 12(b)(6) motion to dismiss. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, the pleadings must show

"more than a sheer possibility that a defendant has acted unlawfully." Id.  A plaintiff cannot merely restate the defendant's potential liability. Id.

In considering the merits of such a motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  The Court may also consider documents if 1) the parties do not dispute their authenticity, 2) they are "central to the plaintiffs' claim" or 3) they are "sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

### B. Application

Defendants assert that judgment on the pleadings is warranted because plaintiff successfully argued in the BMC action that 1) the foreclosure was invalid and 2) he rightfully possessed the property.  Therefore, according to defendants, plaintiff is judicially estopped from now asserting that the foreclosure was valid thus preventing U.S. Bank from collecting mortgage payments.

Defendants further aver that judgment on the pleadings is warranted because 1) the MFDCPA does not include a private cause of action, 2) defendants owe no duty of care to plaintiff and

-5-

thus the negligent infliction of emotion distress claim must fail and 3) plaintiff has failed to plead sufficient facts to state a claim under Chapter 93A.

### 1. Judicial Estoppel

#### a. Legal Standard

The purported judicial estoppel involves both state and federal proceedings, creating the threshold question of whether state or federal judicial estoppel law applies.  Because the case is before this Court based on federal question jurisdiction stemming from plaintiff's FDCPA claim, the Court will apply federal judicial estoppel law. Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 215 (1st Cir. 1987).

Judicial estoppel precludes a party who has taken a certain position to succeed in one proceeding from then asserting a contradictory position in a later proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  It aims "to protect the integrity of the judicial process" by ensuring that parties do not simply adopt an argument based on the pressures of the moment. Id. at 749-50 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)).  In other words, judicial estoppel prevents parties from "playing fast and loose with the courts." Patriot, 834 F.2d at 212 (quoting Scarano v. Cent. R. Co., 203 F.2d 510, 513 (3d Cir. 1953)).

Although judicial estoppel is fact-specific and cannot be "mechanical[ly]" applied, courts "widely agree that, at a minimum, two conditions must be satisfied" before a party is estopped. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004). First, the positions at issue "must be directly inconsistent, that is, mutually exclusive." Id. Second, the party taking the contrary positions "must have succeeded in persuading a court to accept its prior position." Id. Courts also frequently examine a third condition by asking whether "absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage?" Id. In examining possible unfair advantage, the crucial inquiry is whether a court accepted the party's first position. Id.

### b. Application

In defendants' view, plaintiff's contention that the foreclosure sale was void, which they assert the BMC relied upon in its summary judgment decision, directly conflicts with his current position that there was a valid foreclosure thereby conveying title to U.S. Bank so that he is no longer required to make mortgage payments.

Defendants' contention that plaintiff is judicially estopped from now arguing that the foreclosure was valid is well taken. The first requirement for judicial estoppel, that the two positions are directly inconsistent, is met. In the BMC

action, Keenan's memorandum opposing summary judgment stated that

> the foreclosure sale on June 6, 2012 is invalid and void since it clearly violated the notice requirements of M.G.L. c. 244, § 14 . . . .

Plaintiff also contended that "no foreclosure was ever[] lawfully conducted on [Keenan's] property."

Plaintiff's multiple statements in the earlier proceeding that the foreclosure sale was void directly conflict with his assertion in this case that U.S. Bank owns the property because of a successful foreclosure.  In his complaint in this action, plaintiff alleges

> [Wells Fargo] purported to make demand on Keenan for moneys purported[ly] due on this loan account for property which had been foreclosed on some four (4) years earlier and which property is no longer in Keenan's name – but rather is shown on the public land records as being in the name of U.S. Bank.

Thus, plaintiff's positions in the BMC action and this action are contradictory and the first prerequisite for judicial estoppel is satisfied. See Synopsys, Inc., 374 F.3d at 33.

With respect to the second step of the analysis, plaintiff succeeded in convincing the BMC to accept his contention that the mortgage was void at the summary judgment stage of that proceeding.  In the judicial estoppel context, acceptance "is a term of art" and a party need not have succeeded on the merits to show acceptance. Perry v. Blum, 629 F.3d 1, 11 (1st Cir.

2010). Instead, a party is required to demonstrate "by competent evidence or inescapable inference" that a court relied on the argument "either in a preliminary matter or as part of a final disposition." Id.  Even if the court making the prior ruling does not give the reasons for its ruling, if it is "reasonable to believe" that a court ruled in a certain way in reliance on an argument, it suffices to show that the court accepted the argument. Patriot, 834 F.2d at 213.

In the BMC action, Keenan asserted in his opposition to the motion for summary judgment that the foreclosure sale was invalid

> based on the fail [sic] of the Keegan affidavit [to comply, inter alia, with personal knowledge requirements and M.G.L. c. 244, §§ 14, 35A] . . . without which there is no evidence whatsoever that a foreclosure was ever lawfully conducted.

The BMC allowed Keenan's motion to strike the Keegan affidavit and denied U.S. Bank's motion for summary judgment as well as Keenan's motion for summary judgment.  Although the BMC did not explain why it denied U.S. Bank's summary judgment motion, the fact that it did so, after striking the affidavit and thereby removing any evidence that a foreclosure had been lawfully conducted, creates the "inescapable inference" that the Court accepted Keenan's argument that the foreclosure was void. Perry, 629 F.3d at 11.  Accordingly, the second requirement for judicial estoppel is met.

The third consideration for judicial estoppel, whether the party with the contrary positions would derive an unfair advantage, also weighs in favor of its application.  The BMC's acceptance of Keenan's argument that the foreclosure sale was void allowed him to avoid summary judgment and likely gave U.S. Bank incentive to dismiss its claims.  Now Keenan avoids mortgage payments by asserting that the foreclosure sale was valid and U.S. Bank has title to the property.  The complete reversal of positions is precisely "the sort of self-serving self-contradiction, or playing fast and loose with the courts," that judicial estoppel is meant to prevent. Patriot, 834 F.2d at 213 (internal quotation marks omitted).  Consequently, the unfair advantage that Keenan would derive from his contrary positions is a "powerful factor in favor of applying the doctrine." Guay v. Burack, 677 F.3d 10, 17 (1st Cir. 2012)

Plaintiff raises four grounds that supposedly preclude judicial estoppel: 1) the BMC case remains pending, 2) Wells Fargo is not a party to the BMC litigation which 3) means the claims in this case are not affected by the outcome of the BMC case and 4) his claims involve actions that occurred after the BMC trial.  None of those arguments prevents the application of judicial estoppel.

First, the fact that the BMC case is ongoing does not affect the analysis because judicial estoppel can occur based on

a position taken at any stage of the prior proceeding. See Patriot, 834 F.2d at 212-13. Similarly, plaintiff's second and third contentions relying on the fact that Wells Fargo is not a party to the BMC litigation are inapposite because "harm to an opponent is not an invariable prerequisite to judicial estoppel." Id. at 214. Finally, plaintiff's assertion that his claims relate to events that occurred after the trial in the BMC case misses the mark: it is precisely because he first asserted that the foreclosure was void and now that it is valid that judicial estoppel applies.

In sum, the prerequisites for judicial estoppel are satisfied and plaintiff has provided no convincing reason that would prevent the Court from applying the doctrine. To the extent plaintiff's claims rely on the position that the foreclosure sale was valid, they are judicially estopped.

### 2. Plaintiff's Remaining Allegations

Because plaintiff is judicially estopped from alleging that the foreclosure was valid and that he therefore owes nothing on his mortgage, the only remaining factual basis for his claims is that defendants wrongly contacted him directly rather than his counsel. Evaluating plaintiff's claims based on those contacts, defendants are not entitled to judgment on the pleadings with respect to the FDCPA claim. Conversely, they are entitled to


judgment on the pleadings for the claims based upon 1) the MFDCPA, 2) emotional distress and 3) Chapter 93A.

### a. The Fair Debt Collection Practices Act and the Massachusetts Fair Debt Collection Practices Act

The only ground that defendants raised for dismissing the FDCPA claim is that plaintiff is judicially estopped. The only remaining relevant factual allegation, i.e. that defendants directly contacted plaintiff when they knew he was represented by counsel, states a claim under the FDCPA. Section 1692d of that statue states that

> [a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in . . . the collection of a debt.

15 U.S.C. § 1692d. Based on the facts of the complaint, defendants were well aware that plaintiff was represented by counsel, yet they contacted him directly with respect to the money allegedly owed on the mortgage. Accordingly, plaintiff has sufficiently alleged that defendants harassed him in violation of 15 U.S.C. § 1962d and, with respect to that claim, defendants' motion will be denied.

Plaintiff also attempts to assert a claim under the MFDCPA, M.G.L. c. 93, § 49, but that statute does not authorize a private cause of action. See, e.g., O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 33 (D. Mass. 2014). Instead, as addressed below, an individual must bring a claim concerning a violation

of Section 49 under Chapter 93A. Id.  Therefore, to the extent plaintiff attempts to allege an independent claim under the MFDCPA, defendants' motion will be allowed.

### b. Negligent Infliction of Emotional Distress

Defendants correctly contend that the duty of care necessary for a negligent infliction of emotional distress claim is lacking.  As the First Circuit Court of Appeals has determined, "[t]he relationship between a borrower and a lender does not give rise to a duty of care under Massachusetts law." MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013).  Because there is no duty, there can be no claim of negligent infliction of emotional distress. See Rodriguez v. Cambridge Hous. Auth., 823 N.E.2d 1249, 1253 (Mass. 2005). Defendants are entitled to judgment on the pleadings with respect to the negligent infliction of emotional distress claim.

### c. Chapter 93A

The final question to be resolved is whether plaintiff states a claim under Chapter 93A when he alleges that defendants contacted him while he was represented by counsel.  To prevail on a Chapter 93A claim, plaintiffs must show that 1) defendant committed an unfair or deceptive trade practice while engaged in trade or business, 2) plaintiffs suffered an injury and 3) a causal connection between defendant's alleged act and

plaintiffs' injury. See Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011).

Keenan passes the first hurdle because he has alleged that defendants violated both the FDCPA, 15 U.S.C. 1692 et seq., and the MFDCPA, M.G.L. c. 93, § 49, and a violation of either of those statutes is a per se violation of Chapter 93A. McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 123 (1st Cir. 2014).

Whether the pleadings meet the second requirement for a Chapter 93A claim, that Keenan was injured, is a closer question.  As another session of this Court has observed, "the jurisprudence on cognizable injuries under chapter 93A leaves much to be desired by way of clarity." Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 478 (D. Mass. 2015).  The Supreme Judicial Court of Massachusetts ("the SJC") has recently clarified that

> the violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself.

Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 35 (1st Cir. 2016) (quoting Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013)).  In the past few years, the SJC "appear[s] to have returned to the notion that injury under chapter 93A means economic injury in the traditional sense." Rule v. Fort Dodge

Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010). If a plaintiff merely alleges emotional distress under Chapter 93A, he must show that the requirements for intentional infliction of emotional distress ("IIED") are met. Young v. Wells Fargo Bank, N.A., 109 F. Supp. 3d 387, 396 (D. Mass. 2015), aff'd, 828 F.3d 26 (1st Cir. 2016); Haddad v. Gonzalez, 576 N.E.2d 658, 667 (Mass. 1991).

Here, plaintiff alleges that he suffered actual damages from missing work, and copy, mailing and other charges. Even taking the complaint as true, those allegations fail to state a plausible claim for economic harm. Plaintiff's vague assertions of economic damages do not "raise a right to relief above the speculative level". Twombly, 550 U.S. at 555

Plaintiff also fails plausibly to allege emotional distress that rises to the level of injury required for a Chapter 93A claim. To show IIED, a plaintiff must assert that "the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community." Payton v. Abbott Labs, 437 N.E.2d 171, 180 (Mass. 1982). It was ill-advised for defendants to send a letter directly to plaintiff when he was represented by counsel but such an action is not "utterly intolerable in a civilized community." Id.

The failure to allege an actionable injury under Chapter 93A eliminates the need to examine causation. Because plaintiff's purported economic injury is merely speculative and his alleged emotional distress does not meet the prerequisites for IIED, defendants are entitled to judgment on the pleadings with respect to the Chapter 93A claim.

### III.  Plaintiff's Request to Amend the Complaint

Plaintiff suggests in passing that that he should be permitted to amend the complaint. If he seeks to do so, he must file a motion to that effect.

### ORDER

In accordance with the foregoing, defendants' motion for judgment on the pleadings is, with respect to plaintiff's FDCPA claim, **DENIED** but is otherwise **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated March 30, 2017